```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH MCNAB,

                          Plaintiff,                05-CV-6392T

v.                                                  DECISION
                                                    and ORDER
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____
```

INTRODUCTION

Plaintiff, Elizabeth McNab, ("plaintiff" or "McNab"), filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On March 23, 2006, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff was not eligible for SSI or DIB. On April 5, 2006, the plaintiff moved for judgment on the pleadings.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

The plaintiff filed an application for SSI on April 19, 2002.[1] (T. 13, 21). The plaintiff then filed an application for DIB on May 6, 2002, alleging her disability since November 1, 2001. Id. The plaintiff's applications were denied. (T. 22-26). On December 24, 2004, a hearing was held before Administrative Law Judge ("ALJ") Timothy McGuan at which the plaintiff appeared with counsel and testified. (T. 210-224). On January 21, 2005, the ALJ considering the case *de novo* found that the plaintiff was not disabled. (T. 13-20). On June 3, 2005, the ALJ'S decision became the final decision of the Commissioner when the Appeals Council denied the plaintiff's request for review. (T. 4-6). Thereafter, the plaintiff timely filed this civil appeal.

BACKGROUND

A. Non-Medical Evidence and Hearing Testimony

The plaintiff is a 45 year old woman with an Associate's Degree in accounting. (T. 51). She has previously been employed as an accounting clerk. (T. 61).

The plaintiff testified that she could not work anymore because she had manic depression and her mood "cycles" had become more frequent. (T. 216, 222). She stated that when she was in a manic phase, her thoughts raced and she became irritable and prone

---

[1] All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff SSI and DIB.

to anger. (T. 221). She testified to the fact that when she was really depressed she slept fourteen to sixteen hours a day, she had no energy, did not do anything and could barely get out of bed. (T. 220). The plaintiff testified that she could not handle stress and had difficulty concentrating. (T. 218). However, the plaintiff told Dr. Zax that she could care for her personal hygiene needs, clean, laundry, shop and manage her own finances. (T. 109-110). The plaintiff stated that medication helped her symptoms and that she was not suicidally depressed or psychotically manic. (T. 222).

    B. Medical Evidence

Between November 2001 and September 2004 the plaintiff saw therapists Mary Warchocki and Maureen Joyce at Unity Health System approximately one to two times a month. (T. 100-05, 131-94, 222). During this time, the plaintiff also saw Unity Health System psychiatrists Dr. Ram Rapoport and Dr. Donald Branzhof approximately every other month. Id. (All four professionals are collectively known hereafter as the "Unity Health System Specialists.")

Over the course of her treatment with the Unity Health System Specialists, the plaintiff complained that she was depressed, tired, stressed, and had manic episodes. (T. 131, 186-94). The progress notes indicated that her complaints could be due in part to a seasonal affective disorder and could also be directly related to her family stress, including concerns with her son's criminal legal problems and her son-in-law legal problems. (See T. 100-01,

149-50, 184-94). She repeatedly reported that she slept poorly, but that she consumed large quantities of coffee, sometimes sixteen to twenty cups a day. (T. 141, 145, 169, 176-80). She was diagnosed with bipolar disorder and the psychiatrists prescribed Topamax, Risperdal and Trazodone. (T. 155, 194). Over the course of her treatment, the plaintiff's complaints improved, she was less depressed, and she denied symptoms of mania or depression. (T. 139, 141, 155, 156, 165, 171, 174, 175, 181-84). The plaintiff also stated that her sleep difficulties improved by cutting her coffee intake. (T. 155, 156, 165, 171, 174, 175, 181-84). At one point, Dr. Rapoport wrote "[she] recognizes she is moving into a manic state with loads of energy, decreased sleep or need for it, feeling very good, doing lots of writing and cleaning, but recognizes if she gets too manicky, she'll get into suicidality." (T. 137). However throughout the majority of her treatment, the Unity Health System Specialists described her mood as "not overtly depressed or psychotic," "in good spirits," "objectively free of depression," "moderate dysphoria at most," "free from hypomania," "stable," "calm," "pleasant" and "euthymic." (T. 103-181).

On June 27, 2002, Dr. Melvin Zax, a state psychiatrist, examined the plaintiff. (T. 106-10). The plaintiff stated that she did not have any chronic medical condition and that she had never been hospitalized for a psychiatric problem. Id. He commented that the plaintiff did not seem particularly motivated to work. Id. She stated that she drank and used street drugs, but had stopped using

4

both. Id. The doctor noted that the plaintiff could understand and follow simple directions and he noted that she had performed complex tasks independently in the past. Further, he stated that the plaintiff was coherent, her sensorium was clear, her attention and concentration were intact and she could perform simple calculations. (T. 109). He also stated that the plaintiff had problems with addiction in the past and that she currently exhibited symptoms of a bipolar disorder, *but* that this disorder was controlled by medication. Id.

On July 25, 2002 Dr. Hillary Tzetzo, a state agency psychiatrist reviewed the medical evidence of record. (T. 117-130). She concluded that the plaintiff's affective disorder did not satisfy the diagnostic criteria of 12.04 of the listings of impairments set forth in Appendix 1 of 20 C.F.R., Part 404, Subpart P. Id. The doctor reported that the plaintiff had a mild impairment in her activities of daily living and social functioning, moderate difficulties with concentration, persistence and pace, and one to two episodes of decompensation. Id. Ultimately, she concluded that if the plaintiff complied with treatment recommendations, she would be able to understand and follow basic work directions in a low contact work setting, maintain attention for work tasks, relate adequately to a supervisor and use judgment to make basic work related decisions in a low contact work setting. Id.

On December 6, 2004, Dr. Rapoport completed a form which evaluated the plaintiff's residual functional capacity. (T. 195-

199). He indicated that the plaintiff met the criteria of listing 12.04. Id. He found that the plaintiff had only a mild impairment in her ability to relate to others, but rated other categories as moderate or moderately severe. Id. He stated that the plaintiff cycled from mania to depression and that she was marginally stable on her current regimen. Id.

LEGAL STANDARD

A. Jurisdiction and Scope of Review

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. Legal Standards

The plaintiff maintains that she is entitled to SSI and DIB benefits as provided in Title II and XVI of the Act.  See 42 U.S.C. §§ 423(d), 1382(a)(3). Entitlement to benefits under the Act is

conditioned upon compliance with all relevant requirements of the statute.

To be entitled to DIB, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. §§ 1382a, 1382b. Under either statute, however, a claimant must demonstrate the inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Furthermore, a claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1520, 416.920.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third,

if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## DISCUSSION

Here, the ALJ properly followed the five step procedure. The ALJ found that the plaintiff: (1) had not engaged in substantial gainful employment at any time since her alleged onset date; (2) suffered from bipolar disorder; (3) did not have an impairment meeting or medically equivalent to one of the listed impairments in Appendix 1 of the C.F.R, Part 404, Subpart P; (4) could not perform her past relevant work as an accounting clerk but could perform her work in a non-stressful environment doing simple and repetitive tasks that require minimal attention; and (5) showed that there were other jobs in the national economy which the plaintiff could perform. (T. 13-20).

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, he improperly concluded that she was not disabled. (T. 13-20). Specifically, the plaintiff argues that the ALJ erred when he: 1) failed to afford controlling weight to the treating physician; 2) evaluated her residual functional capacity; 3) failed to properly evaluate the "cycling" of symptoms that ranged from depressed to manic; and 4) failed to consult a vocational expert. Therefore, the plaintiff argues that because the ALJ erred, the determination should be reversed or in the alternative, it should be remanded before another ALJ with further consultative updates. This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinion of the plaintiff's treating physician Dr. Rapoport. However, an ALJ will give controlling weight to opinions from treating sources only if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with any other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Here, it was reasonable for the ALJ to give little evidentiary weight to Dr. Rapoport's opinion because the symptoms and

9

limitations reported by the doctor were inconsistent with the record. The ALJ considered Dr. Rapoport's report which indicated that the claimant met Listing 12.04 of the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4 for her bipolar disorder and could not work. However the ALJ found the report to be without merit because it contradicted "the claimant's treatment notes and Dr. Rapoport's residual functional capacity evaluation..." (T. 13-20). The ALJ further stated that "even by her [the plaintiff's] own complaints and admissions, she did not exhibit all of the symptoms as reported by Dr. Rapoport." Id. Furthermore, Dr. Rapoport's evaluation conflicted with Dr. Zax and Dr. Tzetzo opinions as well. Dr. Zax reported that the plaintiff exhibited symptoms of a bipolar disorder, <u>but that this disorder was controlled by medication</u>. (T. 106-110). Dr. Tzetzo concluded that <u>if the plaintiff complied with treatment recommendations</u>, she would be able to understand and follow basic work directions in a low contact work setting. (T. 120-127). Moreover, the majority of the plaintiff's treatment notes from her visits with the Unity Health System Specialists consisted of positive comments using such phrases as ""not overtly depressed or psychotic," "in good spirits," "objectively free of depression," "moderate dysphoria at most," "free from hypomania," "stable," "calm," "pleasant" and "euthymic." (T. 130-181). Thus, it was reasonable for the ALJ to afford little weight to Dr. Rapoport's opinion based on the substantial evidence in the record.

The plaintiff alleges that the ALJ erred in determining her residual functional capacity. As the ALJ found, the record shows that the plaintiff did not have any exertional limitations and she could perform a broad range of physical work activity. (T. 18). The ALJ also found that the plaintiff could occasionally understand, remember and carry out complex and detailed tasks, occasionally concentrate and maintain attention for extended periods, frequently interact with co-workers, and occasionally interact with the public (T. 18-19). He concluded that the plaintiff could work in a non-stressful environment performing simple and repetitive tasks requiring minimal attention and concentration. This conclusion is supported by the Unity Health System Specialists treatment notes, and the opinions of Dr. Zax and Dr. Tzetzo. (T. 106-110, 120-127, 130-181).

Furthermore, the ALJ did evaluate the plaintiff's cycling of symptoms that ranged from depressed to manic. Evidence of this consideration is found in the section of the decision where the ALJ states:

> "claimant has periods of <u>depression</u> with poor sleep, anxiety, and lack of motivation. She would isolate herself during these periods. She would then <u>cycle</u> into a <u>manic</u> phase characterized by decreased need for sleep, increased energy, foggy thinking and racing thoughts." (T. 15). (emphasis added).

Thus, the ALJ did consider the cycling of symptoms along with several doctors' opinions and the hearing testimony in rendering his decision.

Finally, the ALJ did not err when by not consulting a vocational expert. The regulations do not mandate vocational experts at all administrative hearings. See 20 C.F.R. § 404.1566(e) The regulations state "...we [the ALJ] may use the services of a vocational expert or other specialist. We [the ALJ] will decide whether to use a vocational expert...." 20 C.F.R. § 404.1566(e) (emphasis added). Thus, the decision to use a vocational expert is within the ALJ's discretion and based on the substantial evidence of non disability found in the record, it is reasonable to find that a vocational expert was not needed in this instance.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ McGuan.

## CONCLUSION

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for SSI or DIB. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 23, 2006